**E. J. Bunge, Appellant, v. Carl E. Kirchhoff et al., Appellees.**

**Gen. No. 7,802.**

120

Heard in this court at the April term, 1927. Opinion filed December 20, 1928. Rehearing denied January 28, 1929.

CHARLES W. HADLEY and CASSELS, POTTER & BENTLEY, for appellant; GEORGE C. BUNGE, of counsel.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellees; ROBERT N. GOLDING and ALLAN W. COOK, of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

In an action of assumpsit brought by E. J. Bunge, appellant, to recover the purchase price for 25 shares of stock of the Chicago Manifold Company and attorney fees, under the Illinois Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.*, a jury rendered a verdict in favor of the defendants, appellees here, upon which judgment was entered and the appellant brings the record to this court, for review, by appeal.

For the purposes of this opinion appellant will be called "plaintiff" and appellees, "defendants."

The first count of the amended declaration charges that the stock in question was a Class "D" security and had not been qualified for sale; that the stock was

purchased by the plaintiff on April 16, 1923, as a result of a solicitation of the defendants, Baughman and Kirchhoff, who were officers and directors of the defendant corporation; that the stock was sold to plaintiff in violation of the provisions of the Securities Act, and that although the plaintiff had tendered back the stock, the defendants had refused to accept it or to refund to the plaintiff the purchase price thereof. The additional count was like the first, except that the shares of stock therein mentioned were alleged to be Class "C" securities, under the Illinois Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.*

The defendants, Baughman, Kirchhoff and the Chicago Manifold Company, in addition to the general issue, filed three special pleas. The first special plea denied that the stock was a Class "D" security, and alleged that it was a Class "B" security, under the Illinois Securities Act; the second special plea alleged that the plaintiff had not elected to declare the sale of stock void, but had affirmed such sale and had accepted the profits from the ownership of such stock, with full knowledge of the matters set forth in the first count of the declaration; the third special plea alleged that the plaintiff, with full knowledge of all matters set forth in the amended declaration, had entered upon the discharge of all the duties of a stockholder in the defendant corporation, and thereby had ratified and confirmed the sale, and had waived any right he might have had to rescind the same or declare it void. Upon the thus formed issues the trial was had.

The evidence disclosed that the defendants, Baughman and Kirchhoff, were directors of the defendant company, and president and vice president, respectively. The Chicago Manifold Company is an Illinois corporation organized in 1920 for the purpose of manufacturing, selling and distributing stationery supplies and the conducting of a general stationery and print-

ing business. In the spring of 1923 Baughman and Kirchhoff solicited the plaintiff to purchase stock in this company and at the suggestion of Kirchhoff, the plaintiff visited the factory several times, and on April 16, 1923, after some negotiation, purchased 25 shares of stock, giving his check for $2,500 to Baughman, and received by mail a stock certificate dated April 10, 1923. This stock had never been qualified for sale under the statute and had never previously been issued by the company. The check in payment thereof was made payable to the corporation, and was by it indorsed and duly paid by the bank upon which it was drawn. Several months thereafter Kirchhoff advised plaintiff that the capital stock of the company had been increased and in compliance with Kirchhoff's request plaintiff indorsed his original certificate and received in lieu thereof a certificate dated December 27, 1923. This second certificate is identical with the first except it disclosed that the capital stock of the company was $150,000 instead of $100,000. On April 24, 1923, at a special meeting of the stockholders of the company, the capitalization of the company was increased and the plaintiff, being at that time a stockholder, executed a waiver of notice of this meeting and, subsequently, executed and delivered to Kirchhoff, at his request, proxies to represent him and vote his stock at the annual meetings held on January 18, 1924, and January 16, 1925. The company paid no dividends and plaintiff becoming dissatisfied, in the spring of 1925, indorsed his certificate of stock in blank, tendered it to Baughman and demanded the return of his investment. This was refused and thereupon he instituted this suit.

Section 3 of the Securities Act, Cahill's St. ch. 32, ¶ 256, classifies securities into four general divisions, viz:

"(1) Securities, the inherent qualities of which assure their sale and disposition without the perpetra-

tion of fraud, which shall be known as securities in Class 'A';

"(2) Securities, the inherent qualities of which, or in the nature of one or both parties to the sale thereof, assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'B';

"(3) Securities based on established income, which shall be known as securities in Class 'C';

"(4) Securities based on prospective income, which shall be known as securities in Class 'D.' "

It is conceded that this stock is not a Class "A" security and if it is a Class "B" security the judgment should be affirmed but if it is either Class "C" or Class "D" security plaintiff is entitled to recover.

Section 5 of the Securities Act, Cahill's St. ch. 32, ¶ 258, provides that securities in Class "B" shall include (1) an insolated sale by a bona fide owner; (2) Capital stock of a corporation when sold by it among its stockholders; (3) Securities when sold by or to any bank, trust company, insurance company, or building and loan association; (4) Securities when sold to any corporation or broker or dealer in securities and, (5) Securities when sold or offered for sale at any judicial sale or at public sale by auction.

As originally passed section 5 read that securities in Class "B" shall comprise certain enumerated securities. In 1921 the word "comprise" was eliminated and in its stead the word "include" was substituted and it is suggested by the defendants this change is significant; that the words "comprise" and "include" are not synonymous and that section 5 is not meant as an exclusive enumeration but in order to determine whether a particular transaction is exempt from the requirement of prior qualification, the test is not whether the transaction is included within the enumeration contained in section 5 but whether (1) the inherent qualities of the security or (2) the nature of one or

both parties to the sale, thereof, make likely their sale and disposition without the perpetration of fraud.

Section 3, Cahill's St. ch. 32, ¶ 256, classifies securities and is based not only on the securities themselves but on the persons who deal in them, and the circumstances under which the transactions take place. *Stewart v. Brady,* 300 Ill. 425, 437. The expression "inherent qualities" refers to the character of the securities and the expression "assure their sale and disposition without the perpetration of fraud" refers to the assurance from their character that they are not likely to be the subject of fraudulent transactions. *Stewart v. Brady, supra.*

Section 3, Cahill's St. ch. 32, ¶ 256, classifies and gives the legislative reason why certain securities are subsequently enumerated and placed in the several classifications. Fraud may or may not intervene in the sale of every security and the nature of one or both parties to the sale of any security might be shown to be such as to. assure the absence of fraud in such sale, but there are no securities, the inherent qualities of which assure their sale and disposition without fraud, nor are there persons who might be parties to a sale of securities, whose nature is such as to assure the absence of fraud. There may be securities other than those enumerated in section 5, Cahill's St. ch. 32, ¶ 258, that may come just as much within the legislative reason as those which are there enumerated but the legislature did not see fit to include them. The word "include" used by the legislature in the revision of 1921 of the Security Act has, in our opinion, the same meaning as "comprise" used in the original act. The word "include" may be employed as meaning to comprise. 31 C. J. 395 and cases there cited. And the term "comprise" is frequently used synonymously with "include." *Farmers' Nat. Bank v. Cook,* 32 N. J. L. 347; 12 C. J. 310. In our opinion no particular

significance is to be attached to the fact that in 1921 the legislature substituted the word "include" for the word "comprise" in its revision of this act, but taken in connection with the entire act it is apparent that these words are used synonymously and it was the intention of the legislature to create a fixed and definite classification of securities and to permit, without prior qualification, the sale of securities known as Class "A" securities as defined in section 4, Cahill's St. ch. 32, ¶ 257, and to permit the sale of Class "B" securities as defined in section 5, without prior qualification but to prohibit the sale of all other securities unless first qualified as Class "C" or Class "D" securities. The statute has made a definite and fixed classification of the securities which it has defined. *Stewart v. Brady, supra.*

If the construction contended for by the defendants was adopted, it would be impossible for an issuer or dealer in securities, prior to offering stock for sale to determine whether the law required him to qualify such securities or whether they would be exempt from qualification as Class "B" securities. All stocks and other securities are divided into four general classes by this act and these several classes are fully defined by the act. *Piot v. Chartrand,* 237 Ill. App. 117. The only exemption from the requirement of qualification is found in sections 4 and 5 and it therefore follows that only such securities as are therein named are exempt and the stock here sold not being there enumerated must be held to be either a Class "C" or a Class "D" security.

It is next insisted by the defendants that the plaintiff waived his right to avail himself of the benefits secured to him under section 37, Cahill's St. ch. 32, ¶ 290, by executing a waiver of notice of a special stockholders' meeting called for the purpose of increasing the capital stock of the company, by exchanging his

stock certificate and by executing proxies for the annual meetings held in January, 1924, and January, 1925; that by so doing appellant, not being ignorant of the true situation of the condition of the company, elected to become a stockholder and cannot now be permitted to rescind the sale and recover the purchase price of this stock.

Prior to instituting this suit plaintiff tendered his stock certificate to the defendants and demanded a return of its purchase price. It would not be expected of anyone that he would elect to treat a sale of stock as void until he had discovered it was not profitable for him to retain it. Section 40, Cahill's St. ch. 32, ¶ 293, provides that all civil actions to recover money based upon any provision of this act must be commenced within five years after the commission of the act complained of. This statute is penal in character and its provisions are intended as a punishment to those who engage in disposing of stock or securities in violation of the act. The plaintiff was by statute given five years to institute this suit, and there is nothing disclosed in this record which can be held to work an estoppel or waiver.

Holding as we do that the lower court erred in denying plaintiff's motion for a directed verdict at the close of all the evidence it would follow, inasmuch as he is entitled to recover his attorney fees, that this case should be remanded for another trial. Plaintiff, however, in his written brief and argument submitted to the court, waives this unliquidated item and requests the court to enter judgment here for $2,500. The defendants oppose this on the ground that plaintiff's knowledge of the affairs of the company, his acquiescence in his purchase as shown by his affirmative acts as a stockholder constitute sufficient evidence to warrant the submission of the case to a jury for its determination of the question whether plaintiff elected to

be a stockholder or a creditor. These facts we have held cannot, as a matter of law, preclude plaintiff from maintaining this suit and recovering the amount paid by him for the stock purchased. The defendants are in no position to complain if the judgment entered herein is less by the amount of attorney fees than it would have been had the peremptory instruction tendered by plaintiff been given.

The record authorizes us to render judgment here. *Handley v. Drum,* 237 Ill. App. 587–596. The judgment of the circuit court is reversed and judgment for the plaintiff is entered in this court against the defendants for $2,500.

*Judgment reversed and judgment here.*