Charles Hudson, Appellant, v. Sam Silver and Gustav H. Bunge, Appellees.

Gen. No. 36,794.

Opinion filed December 11, 1933.
Rehearing denied and opinion slightly modified December 27, 1933.

ALFRED ROY HULBERT and CHARLES HUDSON, for appellant.

CHAYES & CHAYES, for appellees; EDWARD CHAYES and ABRAM Z. ZIETLEIN, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff suffered an adverse judgment upon a trial by the court, without a jury, of an action to enforce a claim arising under the Securities Law (Blue Sky Law), ch. 32, ¶ 290, sec. 37, Cahill's Statutes. Plaintiff appeals.

November 21, 1927, plaintiff bought 50 shares of class "C" stock in the Downers Grove Investment Company, paying $10,000; he subsequently learned that the stock was not qualified under the Securities Law and tendered the stock to the sellers and demanded the return of his money, which was refused and this suit followed.

The burden is upon the defendant in these cases to prove that the stock was qualified. *Abrams v. Love,* 254 Ill. App. 428.

Although there is much evidence in the record tending to show an attempt made by the officers of the Downers Grove Investment Company to have the stock qualified pursuant to the statute, it failed to prove that this attempt was successful. It seems to be conceded that the stock was not qualified and was Class "C."

There is much argument touching the question whether plaintiff first approached Mr. Bunge, president of the Downers Grove Company, or whether Mr. Bunge first wrote plaintiff, whom he had known for some years, suggesting that plaintiff become one of the directors of the company. We do not think the point is of controlling importance. The essential fact is that plaintiff bought the stock and paid for it.

Plaintiff, having bought the stock, which was not qualified as required by the statute, was entitled to recover the purchase price unless the transaction was within some of the statutory exemptions, or plaintiff had done something with reference to his stock which would defeat his claim.

Defendants claim the benefit of the exemption provided in section 5 of the Securities Law, Cahill's St. ch. 32, ¶ 258, which exempts a sale made by a bona fide owner of such security who disposes of his own property for his own account. In the fall of 1927, Mr. Bunge, president of the Downers Grove Company, employed Samuel Silver, the other defendant, who was in the business of selling securities, to carry on a "campaign" to sell the stock of the company upon a commission basis. Pursuant to this campaign Silver sold the stock in question to plaintiff. Silver received plaintiff's check for $10,000 and he or plaintiff forwarded it to Bunge; neither of the defendants owned the stock nor was the Downers Grove Investment Company the owner; it was the issuer of the stock. Subparagraph 2 of section 2 of the Securities Law, Cahill's St. ch. 32, ¶ 255, defines an "issuer" as every company

which shall hereafter issue any security sold or offered
for sale to any person or persons in this State. In
*Abrams v. Love,* 254 Ill. App. 428, the court noted the
difference between the company which issued the stock
and the one who sells the same stock. In that case, as
here, the president of the issuing company sold the
stock of his company, and he was held liable in an ac-
tion under the Blue Sky Law. Bunge and Silver were
dealers in the stock and the statute exempts only an
owner ''not being a broker or dealer in securities.''

Defendants also say that the sale to plaintiff was a
single transaction and therefore comes under the stat-
ute which exempts an isolated sale of any security,
''such sale not being made in the course of repeated
and successive transactions of a like character.''
(Sec. 5, Securities Act.) The sale of the stock to plain-
tiff was not an isolated transaction. Silver made at
least 75 sales of this stock to many persons, upon which
Bunge paid him a commission.

Clause 2 of section 37, Cahill's St. ch. 32, ¶ 290, pro-
vides that in any action where the defendant relies
upon any of the exemptions provided for in the Act,
he has the burden of proof to establish such exemption.

It is next asserted as a defense that plaintiff had re-
ceived some $858 as dividends on his stock, and when
he tendered the stock he tendered only the certificates
of stock and not the dividends. Plaintiff was not bound
to tender any dividends. The statute requires only
that he tender his stock. Furthermore, what right
could either Bunge or Silver have to the dividends?
Neither of them owned the stock bought by plaintiff
and obviously were not entitled to any dividends on
the same.

It is earnestly argued that plaintiff, having partici-
pated in the dividends of the company and having
acted as a director even after he had tendered the
stock, acquiesced in and affirmed the contract of pur-

chase. A few days before February 19, 1931, plaintiff first learned of the failure to qualify the stock and on that date tendered back his stock and demanded the return of his money, which was refused; March 14th this suit was commenced. As we have seen, the stock was purchased in November, 1927, so the suit was commenced within the period of limitation set by the statute, which requires all such actions to be commenced within five years "after the commission of the act complained of." (Sec. 40, Cahill's St. ch. 32, ¶ 293.)

Much evidence was introduced tending to show active participation by plaintiff in the affairs of the company both before and after the commencement of the suit. It is unnecessary to note the various things done by plaintiff in this respect, for in our opinion they are not controlling. Generally speaking, they were the ordinary actions of a director to conserve the interests of the company. In an action in chancery, seeking to rescind a contract for fraud or misrepresentations, the actions of plaintiff would tend to show affirmance which would defeat an attempt to rescind. The cases cited by the defendants are, for the most part, chancery actions. None of them relates to actions under the Blue Sky Law except *Glen v. Dodson*, 347 Ill. 473. In that case the plaintiff had sold part of his stock and it was held that he could not recover under the statute for the reason that he had not tendered back all of the stock he had purchased. In *Bunge v. Kirchhoff*, 251 Ill. App. 119, which was an action under the Blue Sky Law, the defense was that the plaintiff had affirmed the sale of the stock and accepted profits from his ownership, had exchanged his stock certificates for others, executed proxies and discharged the duties of a stockholder in the corporation, with full knowledge that the stock was not qualified under the Securities Law, and that thereby he had ratified and confirmed the sale and had waived any right he might have to rescind the same.

The court held that such conduct did not waive his rights to proceed under the statute; that the statute was penal in character and was intended as a punishment for those who engaged in disposing of stock or securities in violation of that act. The judgment of the lower court was reversed and judgment was entered for plaintiff. Certiorari was denied by the Supreme Court. In *Brannan, Beckham & Co. v. Ramsaur,* 41 Ga. App. 166, the plaintiff drew a salary as an officer or director of the company, and it was held that this did not waive his right to prosecute his action under a statute like ours.

In the instant case, when plaintiff tendered his stock and brought suit he did not by those acts cease to be the owner of the stock; he was its owner until the tender was accepted. Defendants' argument seems to be that, having elected to rescind he could not thereafter attempt to exercise any of the duties of a stockholder. We hold to the contrary. The statute defines the defenses that may be made to an action brought under it, and knowledge of, or participation in, the affairs of the corporation are not so named. No cases are presented which support defendants' contention in this respect. As we have heretofore said, this is a penal statute and the steps which entitle a purchaser of stock, not qualified, to recover are definitely stated. He may tender to the seller the securities he has purchased and demand the return of his money, and if the tender is refused the sellers shall be jointly and severally liable for the amount paid for the stock. In *Wehrwein v. Eastman Springs Beverage Co.,* 238 Ill. App. 443, we held that the presence of fraud is not a condition of liability in such transactions, and that whether it was a harsh law which might frequently work an injustice was no concern of the courts. We said: "If it is shown that the company did not comply with the statute, and the defendants sold or knowingly per-

formed any act in any way furthering the sale of such securities, they are liable upon a tender of the certificates of stock. It does not make any difference whether plaintiff went into the transaction fully informed and with his eyes open.''

The statute provides that plaintiff may also recover in this action reasonable attorney's fees. The evidence in this case is that such fees would be $2,000, and there is no evidence to the contrary. Plaintiff is entitled to recover the amount paid for his stock— $10,000—and also $2,000 as reasonable attorney's fees. As the case was tried by the court, without a jury, we are authorized to enter judgment in this court.

The judgment of the circuit court is reversed, with a finding of facts, and judgment for plaintiff is entered in this court against defendants for $12,000.

*Reversed with finding of facts and judgment here.*

MATCHETT, P. J., and O'CONNOR, J., concur.

Finding of facts: We find that the stock in question was not qualified under the Illinois Securities Law; that neither of the defendants owned the stock; that they jointly participated, as dealers, in negotiating and furthering its sale; that the sale to plaintiff was not an isolated sale by an owner for his own account; and that a tender of the stock was made to the sellers with a demand for the return of the purchase price, which was refused.